| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | |
| SOUTHERN DISTRICT OF NEW YORK | FOR PUBLICATION |

---------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| | |
| JAMES BUCALA | Case No.:    11-36977 (CGM) |
| and DOREEN BUCALA, | |
| | |
| Debtors. | |

---------------------------------------------------------X

| | |
|---|---|
| ULTIMORE, INC., | Adv. Pro. No.  11-9078 (CGM) |
| Plaintiff, | |
| v. | |
| | |
| JAMES BUCALA | |
| and DOREEN BUCALA, | |
| | |
| Defendants. | |

---------------------------------------------------------X

APPEARANCES:

GENOVA & MALIN
Hampton Business Center
1136 Route 9
Wappingers Falls, NY 12590
By:    Thomas Genova
*Attorneys for Plaintiff, Ultimore, Inc.*

SILVER, FORRESTER & LESSER, P.C.
3250 Route 9W
New Windsor, NY 12553
By:    Karl Najork
*Attorney for the Defendants, James and Doreen Bucala*

## MEMORANDUM DECISION GRANTING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

The plaintiff brings this summary judgment motion seeking a declaratory judgment that it

is a secured creditor by virtue of a security agreement having been formed pursuant to New York

law. Because the Court finds that the Contract and Purchase Agreement meet all the required

elements of a security agreement under the New York Uniform Commercial Code, the Court holds that plaintiff is a secured creditor.

## Background

On August 3, 2005, the Defendants purchased a 2005 Skyline Doublewide Ranch manufactured home from Ultimore, Inc. ("Ultimore") for $151,258.25. *See* Opp. Ex. B; P's Stmt Facts ¶ 2. The closing was held at the office of Bruce Stern, an attorney. *See* Def. Aff. ¶ 2. A payment of $131,158.25 was made at closing. Opp. Ex. B. According to the contract of sale (the "Contract"), the Seller was to "hold a note for the $20,000.00 remainder for a period of 20 years (240 months) at 9% interest, which will be a monthly payment of $179.95, and amortized with a Promissory Note to compliment this Contract, as an addendum to the Contract." Opp. Ex. B. Among other things, the Promissory Note provides that "a motor vehicle lien may be filled [sic] against the title of the home" by Ultimore and that Ultimore may repossess the home in the event of the Defendants' default. Promissory Note ¶ 1, 8.

On April 15, 2011, the Debtors entered into a contract of sale to sell the manufactured home to Mr. and Mrs. Gunning for $100,000. P's Stmt. Facts ¶ 7; *see also* Def. Aff. ¶ 11. The Debtors filed chapter 7 on July 11, 2011. P Facts ¶ 1; Voluntary Petition, *In re Bucala*, (No. 11-36977). The Debtors sold their manufactured home in August 2011. Def. Aff. ¶ 11. The trustee filed his report of no distribution on August 13, 2011. Trustee's Report, *In re Bucala*, (No. 11-36977). On August 26, 2011, the Debtors amended their schedules D and F, removing Ultimore as a secured creditor from schedule D and adding Ultimore as an unsecured creditor to schedule F. P's Stmt. Facts at ¶ 13; Amended Schedules, *In re Bucala*, (No. 11-36977). The Debtors received their discharge on December 23, 2011. Order of Discharge, *In re Bucala*, (No. 11-36977).

The Court notes that this sale took place post-petition and pre-discharge, and that $7,000 was paid to as a commission to a real estate broker, Century 21, without permission of this Court. These issues, while potentially serious, are not before the Court at this time.

Ultimore filed this adversary proceeding on September 27, 2011 seeking a declaratory judgment, pursuant to Federal Rule of Bankruptcy Procedure 7001, that it maintains a security interest in the manufactured home.  Ultimore also seeks a judgment declaring the debt owed by the Defendants to Ultimore non-dischargable, pursuant to section 523(a)(6) for willful and malicious injury and 727(a)(2)(B) for transferring property of the estate with the intent to hinder, delay, or defraud creditors.

Defendants filed an answer denying all allegations and asserting the affirmative defense of statute of frauds.

Ultimore moved for summary judgment on its first cause of action: whether Ultimore is a secured creditor.

## Summary of the Law

*Summary Judgment Standard*

Summary judgment should be granted "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Jacobowitz v. The Cadle Co.*, 309 B.R. 429, 435 (S.D.N.Y. 2004); Fed. R. Civ. P. 56(a).  The moving party has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) "[T]he court resolves all ambiguities and draws all permissible factual inference against the movant." *Jacobowitz*, 309 B.R. at 435.

The nonmoving party should oppose the motion for summary judgment with evidence that is admissible at trial. *See* Fed. R. Civ. P. 56(e)(1); *Crawford v. Dep't of Investigation*, 324

Fed. Appx. 139, No. 07-4793, 2009 LEXIS 10256 (2d Cir. May 13, 2009) (court affirmed award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor, and conclusory allegations"); *Raskin v. The Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) (court affirmed award of summary judgment in favor of defendant; court noted "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and rejected an expert report as inadmissible).

"The purpose of a declaratory judgment 'is to clarify and settle disputed legal relationships and to relieve uncertainty, insecurity and controversy.'" *Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 327 (S.D.N.Y. 2010) (quoting *Broadview Chemical Corp. v. Loctite Corp.*, 474 F.2d 1391, 1393 (2d Cir. 1973)).

***Whether a "Security Agreement" Exists Pursuant to New York Uniform Commercial Code***

Pursuant to New York's Uniform Commercial Code, a "[s]ecured party" is "a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding . . . ." N.Y. U.C.C. Law § 9-102(a)(72)(A) (McKinney 2002 & Supp. 2011). A "[s]ecurity agreement" is "an agreement that creates or provides for a security interest." N.Y. U.C.C. Law § 9-102(a)(73) (McKinney 2002 & Supp. 2011).

According to N.Y. U.C.C. section 9-203(b)(3)(A), a security interest attaches to collateral and is enforceable only if "the debtor has authenticated a security agreement that provides a description of the collateral . . . ." N.Y. U.C.C. Law § 9-203(b)(3)(A) (McKinney 2002 & Supp. 2011).

*Authentication*

According to section 9-102(a)(7), "'[[a]uthenticate' means: (A) to sign; or (B) to execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record." N.Y. U.C.C. Law § 9-102(a)(7) (McKinney 2002 & Supp. 2011).

Section 9-203 does not require that a security agreement be signed by both parties to be enforceable. N.Y. U.C.C. Law § 9-203 (McKinney 2002 & Supp. 2011); *In re Wingspread Corp.*, 107 B.R. 456, 460 (Bankr. S.D.N.Y. 1989). The fact that the Defendants signed both the Promissory Note and the Contract is enough to satisfy the authentication requirement.

*Description of Collateral*

Pursuant to section 9-108(a), "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." The Official Comment to this rule states that:

> The purpose of requiring a description of the collateral in a security agreement . . . is evidentiary. The test of sufficiency of a description . . . is that the description do the job assigned to it: make possible the identification of the collateral described. This section rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called "serial number" test).

N.Y. U.C.C. Law § 9-108(a) cmt. 2 (McKinney 2002 & Supp. 2011).

The Promissory Note describes the collateral as "a 28' X 60' 2006 [sic] Skyline Manufactured Home, model 4911-0179-U-A & B." The Defendants argue that this description is incorrect and that the collateral is "a 2005 Skyline Manufactured Home, Title and Identification No. 49110179UAB." Def. Response to Stmt. Facts at ¶ 3.

The Contract identifies the manufactured home as a "2005 Skyline 60'x28' NEW Doublewide ranch Three bedrooms, 2 baths, Birchfield #8696CT Serial# 4911-0179-UBA [sic]

Page **5** of **13**

Color: Gold vinyl sided, fuly [sic] skirted, white vinyl." Opp. Ex. A ¶ 1. The Contract refers to the existence of the Promissory Note in paragraph 4b.[1] Opp. Ex. A. A court may look to multiple documents to determine whether a valid and enforceable security agreement exists. In *King v. Tuxedo Enters.*, 975 F. Supp. 448, 453 (E.D.N.Y. 1997), the court held that a U.C.C. financing statement together with a letter between the parties was sufficient to constitute a security agreement and conditional assignment despite the fact that the document purporting to constitute the assignment did not contain a description of the collateral.

Despite the fact that both the Contract and the Promissory Note are not identical, when the documents are read together, it is obvious that two documents describe the same collateral. The fact that the Contract describes the collateral with the accurate year and refers to the Promissory Note, which contains a description of the collateral with a different year, is enough to satisfy the requirement that a security agreement contain a description of collateral. *See* N.Y. U.C.C. Law § 9-108(a) (McKinney 2002 & Supp. 2011). To deny secured status to Ultimore based upon a typographical error in the description of the collateral "would represent a warrantless reliance on formalism and violate the general rule that the UCC be 'liberally construed and applied to promote its underlying purposes and policies.'" *In re Numeric Corp.*, 485 F.2d 1328, 1332 (1st Cir. 1973); *see also* N.Y. U.C.C. § 1-102(1). As the description provided makes it possible to identify the collateral, the description is sufficient.

*Security Agreement*

For there to be a valid and enforceable security agreement, a formal and separately signed document labeled "security agreement" is not necessary. *In re Modafferi*, 45 B.R. 370, 372 (S.D.N.Y. 1985) (citing *In re Numeric Corp.*, 485 F.2d at 1331; *General Motors Acceptance Corp. v. Lefevre (In re Lefevre)*, 27 B.R. 40, 42-43 (Bkrtcy. D. Vt.), *aff'd*, 38 B.R. 980 (D. Vt.

---
[1] There are two paragraphs numbered 4 in the Contract—the Court is referring to the first paragraph numbered 4.

1983). Rather courts have read several documents together and looked at the surrounding circumstances to find the existence of security agreements. *See In re Wingspread Corp.*, 107 B.R. 456, 461 (Bankr. S.D.N.Y. 1989). Almost any combination of documents can be used to prove the existence of a security agreement so long as the documents embody the intention of the parties to create a security interest. *White Plains Towing Corp. v. Polizzi Towing Corp.,* 1991 U.S. Dist. LEXIS 1494 (S.D.N.Y. Feb. 4, 1991).

In *In re Numeric*, the First Circuit found that a financing statement together with a resolution passed by the debtor's board of directors authorizing the debtor to grant a security interest in the collateral met the requirements for a security agreement. 485 F.2d at 1328. In *In re Bollinger Corp.*, 614 F.2d 924, 928-29 (3rd Cir. 1980), the Third Circuit Court of Appeals upheld a security interest where, in addition to a financing statement, the parties exchanged letters which clarified the pledge of collateral.

In this case, the Defendants signed a "Promissory Note," which includes an indented paragraph numbered 1 and entitled in bold as "Lien" under a section labeled "Additional Promises and Agreements of the [B]orrower." Mot. SJ Ex. B ¶ 1. That paragraph states that "[t]he borrower hereby agrees a motor vehicle lien may be filled [sic] against the title of the home by the Lender. Borrower can lose the home for failure to keep the promises in this note." Mot. SJ Ex. B.¶ 1.

The Defendants argue that this language does not demonstrate an intent to grant a "present security interest" in the collateral because of the use of the word *may*, which Defendants argue implies a "contingent and future potential interest." *See* Def. Br. 3, 4 *In re* Bucala, (No. 11-36977). The law does not require evidence of a "present security interest" but rather, evidence "of present intent to create a security agreement." N.Y. U.C.C. Law § 9-102(a)(7)

(McKinney 2002 & Supp. 2011); *In re Modafferi*, 45 B.R. 370, 373 (S.D.N.Y. 1985). The Promissory Note is replete with references to Ultimore's status as a secured creditor and when read in full, rather than paragraph by paragraph, the Promissory Note clearly demonstrates the Defendants' intent to grant Ultimore a security interest in the manufactured home.

The lien is specifically mentioned in two additional paragraphs in the Promissory Note: paragraph number 5 states, " . . . . Payments made by Lender together with interest at the rate provided in this Note from the date paid until date of repayment shall be added to the Debt *and secured by the DMV lien*;" and paragraph number 13 states, "Borrower may not sell or convey any equitable interest in the home as long as this note remains unpaid. *Lender shall discharge the DMV lien when the note is fully paid.*" Mot. SJ Ex. B ¶ 5, 13 (emphasis added).

The Promissory Note also requires that the Borrowers maintain home insurance and assign and deliver the policies to Ultimore, and prohibits the Defendants from significantly devaluing the property in anyway. *See* Mot. SJ. Ex. B ¶ 2, 4. Most significantly, paragraph 8 states that "[i]f Borrower defaults under this Note *the Home may be repossessed as provided by law*." *See* Mot. SJ. Ex. B ¶ 8 (emphasis added).

According to section 9-609 of New York's Uniform Commercial Code, only a secured party may take possession of collateral. N.Y. U.C.C. Law § 9-609(a)(1) (McKinney 2002 & Supp. 2011); *see also American Furniture Co., Inc. v. Extebank*, 676 F.Supp. 455, 457 (E.D.N.Y.1987) ("After the default, a secured party has the right to take possession of the collateral."); *LNC Investments, Inc. v. First Fidelity Bank*, 247 B.R. 38, 43-44 (S.D.N.Y. 2000) (discussing the difference between secured and unsecured creditors). The Promissory Note clearly grants Ultimore permission to repossess the Defendants' manufactured home in the event

of default. The Promissory Note and Contract create a security agreement that provides the manufactured home as collateral for Ultimore's loan.

*Failure to Perfect has No Effect on Secured Status*

The Defendants argue that Ultimore's failure to file a motor vehicle lien or any other perfection document, such as a U.C.C. financing statement, demonstrates that Ultimore never had an interest to protect. Opp. at 4. The recording of a lien has no effect on the granting of a security interest. Section 9-201(a) of New York's U.C.C. provides that "[e]xcept as otherwise provided in this chapter, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." N.Y. U.C.C. § 9-201(a) (McKinney 2002 & Supp. 2011); *see also Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 333 (S.D.N.Y. 2010) (explaining that section 9-201(a) means that "the secured creditor, even an unperfected secured creditor, has greater rights in its collateral than any other creditor, unless the Code provides otherwise. A creditor without a security interest or a lien has no claim to any specific collateral, and 9-201 gives an unperfected but *secured* creditor rights superior to the rights of that unsecured creditor.") (quoting 4 James J. White & Robert S. Summers, Uniform Commercial Code § 33-2 (6th ed. 2010)).

The purpose of filing a financing statement is "to put third parties on notice that the secured party who has filed it may have a perfected security interest in the collateral described." *In re Numeric Corp.*, 485 F.2d 1328, 1331-1332 (1st Cir. 1973); *see also King v. Tuxedo Enterprises, Inc.*, 975 F.Supp 448, 453 (E.D.N.Y. 1997) (explaining same). A motor vehicle lien serves a similar purpose. *See General Motors Acceptance Corp. v. Waligora*, 24 B.R. 905 (W.D. N.Y.1982). A secured party's failure to record a lien does not invalidate the security agreement.

*Purchase-Money Security Interest*

Section 9-102(a)(54)(A) defines a "manufactured home transaction" as " a secured transaction . . . that creates a purchase-money security interest in a manufactured home, other than a manufactured home held as inventory." N.Y. U.C.C. § 9-102(a) (McKinney 2002 & Supp. 2011). Pursuant to section 9-103(b)(1), " [a] security interest in goods is a purchase-money security interest . . . to the extent that the goods are purchase-money collateral with respect to that security interest." N.Y. U.C.C. § 9-103(b)(1) (McKinney 2002 & Supp. 2011).

Having already determined that Contract and Promissory Note granted Ultimore a security interest in the manufactured home, the Court now finds that Ultimore holds a purchase-money security interest in that home. Failure to perfect that interest does not result in a loss of its secured status. *Lashua v. La Duke*, 272 A.D.2d 750, 752 (N.Y. App. Div. 3d Dep't 2000) ("Failure to perfect a purchase-money security interest within 20 days from the date of delivery of the collateral does not result in a loss of its 'purchase money' status.").

*Intent to Grant a Secured Interest*

The Defendants make several arguments that they had no knowledge of Ultimore's secured interest and were not told that Ultimore would be a secured creditor. They argue that the Contract, Promissory Note and other documents were "presented to [them] in a 'matter of course' way." Def. Aff. ¶ 4. They even state that "Ultimore was never identified as the 'seller' of the manufactured home," despite the fact that the Contract signed by them and included as an exhibit to their opposition clearly defines Ultimore, Inc. as "SELLER." *Compare* Def. Aff. ¶ 4 *with* Opp. Ex. A.

This argument conflicts with other portions of the Defendants' affidavit, which implies that they believed Ultimore to be secured until they were told by the chapter 13 trustee and their

attorneys that Ultimore had not filed its financing statement and was, therefore, not secured. The Defendants originally scheduled Ultimore as a secured creditor in their bankruptcy petition by virtue its having a motor vehicle lien. Voluntary Petition, *In re Bucala*, (No. 11-36977). After closing on the sale, the Defendants e-mailed Richard Johnson, President of Ultimore, "to ascertain how much was claimed to be due and owing on the outstanding loan"—despite the fact that the Defendants has already filed their chapter 7 petition and should have been aware of the fact that they would no longer owe any debt to unsecured creditors. *See* Def. Aff. ¶ 11.

The Defendants allege that they presented documents of sale to the trustee during the 341 meeting and the chapter 7 trustee allegedly advised them that he did not believe that Ultimore was secured.[2] Def. Aff. ¶ 16-18. The Defendants "discussed this advice with [their] attorneys, and in reliance thereon, [they] amended the petition to list Ultimore as an unsecured creditor." Def. Aff. ¶ 16-18. It was only after these conversations that the Debtors amended their schedules and changed Ultimore's status from secured to unsecured. Def. Aff. ¶ 17.

*Trustee May Avoid Unperfected Security Interests*

The Defendants argue that an unperfected security interest is voidable by the trustee as a hypothetical lien creditor pursuant to section 544 of the Bankruptcy Code. The Bankruptcy Code gives a trustee power to "stand[] in the shoes of the debtor" and bring claims founded on the rights of the debtor that could have been brought by the debtor prior to the bankruptcy proceeding. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); 11 U.S.C. §

---

[2] Anything that the trustee told the Defendants is hearsay and cannot be used as evidence in the summary judgment proceeding. *See* Fed. R. Civ. P. 56(e)(1); *Crawford v. Dep't of Investigation*, 324 Fed. Appx. 139, No. 07-4793, 2009 U.S. App. LEXIS 10256 (2d Cir. May 13, 2009) (court affirmed award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor, and conclusory allegations"). "Summary judgment evidentiary requirements are not so lax as to permit a litigant to cram one or two affidavits with hearsay statements and argue that because the out-of-court declarants will eventually testify at trial, their statements as reported by the affiants are admissible for summary judgment purposes." *Action Sec. Service, Inc. v. America Online, Inc.*, 2005 WL 1529578 at *2 (M.D.Fla. June 28, 2005). Be that as it may, it is for the Court, not the trustee, to determine whether a creditor is secured.

541, 544, 547. Even though the trustee has chosen not to exercise his rights under 544, the Defendants argue that the trustee "effectively exercised his priority" by filing his report of no distribution.

The no asset report is simply that—a report; it is not equivalent to abandonment or to exercising an avoidance power. It is not akin to voiding an unperfected security interest. Nor is it equivalent to abandonment of the asset. Abandonment may only be accomplished as outlined in section 554 of the bankruptcy code.

> Scheduled property may be abandoned by the trustee after notice to all creditors and a hearing; or, scheduled property, which is not administered by the trustee, is abandoned by operation of law upon the formal closing of the bankruptcy case. The statute does not mention a trustee's final report or otherwise authorize a trustee to abandon property solely by filing any document with the bankruptcy court which is not accompanied by notice and a hearing. These notice and hearing requirements serve to protect the trustee, who often must make decisions based on incomplete or less than candid information supplied by debtors, but they serve to protect creditors from improvident, ill-advised or hasty decisions by bankruptcy trustees. These benefits would be eviscerated if a trustee is allowed to abandon property by simply filing a statement with the bankruptcy court of his intent to do so.

*In re Beaton*, 1997 Bankr. LEXIS 1312, 6-7 (Bankr. N.D. Ala. June 9, 1997). The trustee's report of no distribution does not prevent a creditor from exercising its rights. It merely indicates the trustee's opinion that there are no assets available for distribution.

Moreover, the Defendants have not demonstrated standing to pursue such an action on the trustee's behalf. In a chapter 7 case, a debtor does not have standing to pursue an action even if the trustee has failed to do so "because [the debtor] has no interest in the distribution of assets

of the estate." *In re Manshul Constr. Corp.,* 223 B.R. 428 (Bankr. S.D.N.Y. 1998); *see also 60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities),* 218 F.3d 109 (2d Cir. 2000) ("It is well-established that a Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, *only if* there could be a surplus after all creditors' claims are paid.") (emphasis added). The trustee's report makes it more difficult for the Defendants to prove standing, as the trustee has indicated—through the filing of his report—that there is no possibility of a surplus for the Defendants. The trustee's report of no distribution has no effect on whether Ultimore is secured.

*Defendants Argument Concerning Altered Paperwork*

The Defendants argue that the Plaintiff is not credible because several documents that were filed with the summary judgment motion were allegedly altered, including a letter dated April 20, 2011 and an invoice dated July 28, 2011. The Court did not rely on these documents in making its determination as to whether or not a security agreement exists as they were dated 2011 and therefore are not relevant to the analysis of whether a security agreement was created in 2005.

## Conclusion

For the foregoing reasons, summary judgment is granted in favor of Ultimore. Ultimore is a secured creditor for purposes of this chapter 7. Plaintiff is directed to submit an order consistent with this Decision.

Dated: January 30, 2012
      Poughkeepsie, New York

                                            */s/ Cecelia G. Morris*
                                            **United States Bankruptcy Judge**